## STONE v. RIGGS *et al.*

No. 6526.   Opinion Filed July 21, 1914.

(142 Pac. 298.)

**COUNTIES—Officers—Qualifications—''Qualified Voters of the County''** —Females.   Pursuant to section 18 of the Schedule to the Constitution, the Legislature, in prescribing the qualifications for county officers, adopted, at the suggestion of the Code Commission, Rev. Laws 1910, sec. 1549, which reads: ''No person shall be eligible to any county office unless he shall be, at the time of his election or appointment, a qualified voter of the county.'' Assuming the same to have been legally adopted, held, that ''qualified voter of the county'' means a qualified voter from the body of the county.   Held, further, that a female citizen eligible to vote at school district elections is such a voter, and as such is qualified to hold the office of county clerk provided for in article 17, sec. 2, of the Constitution.

(Syllabus by the Court.)

*Error from District Court, Washita County;*
*James R. Tolbert, Judge.*

Mandamus by "Mrs. John Stone" against A. W. Riggs and others, constituting the County Election Board of Washita County, Okla.   Peremptory writ denied, and plaintiff brings error.   Reversed, with directions.

*Massingale & Duff* and *Guy P. Horton,* for plaintiff in error.

*A. R. Ash,* for defendants in error.

TURNER, J.   From a judgment of the district court of Washita county refusing to grant a peremptory writ of mandamus requiring the county election board of that county to file her petition and certify her name to the state board as a candidate for the office of county clerk, to be voted on at the primary election to be held in and for that county on August 4, 1914, plaintiff in error, plaintiff below, brings the case here.

Both sides agree that whether the court erred in refusing so to do turns upon a proper solution of the question:   Is a woman, otherwise qualified, eligible to hold the office of county clerk?   By

"otherwise qualified" is meant that she possesses like qualifications of a male elector, and hence is qualified to vote at school district meetings. Const. art 3, sec. 3. In *Gilliland v. Whittle et al., County Election Board,* 33 Okla. 708, 127 Pac. 698, we held that there were no qualifications prescribed by the Constitution which in terms make any distinction between the sexes in the matter of holding the office of clerk of the district court, and held that a woman, otherwise qualified, was eligible under the Constitution to hold that office. What we said there is equally applicable here to the office of county clerk, and the same deduction follows as to the right of a woman, otherwise qualified, to hold the office in question. Both are constitutional offices, created by article 17, sec. 2, of that instrument. We also said in that case:

"It is our opinion that the Constitution remits to the Legislature the subject of the proper qualifications to be possessed by the holders of such an office as is here in question."

And so it does in express terms. Stripped to the point, section 18 of the Schedule reads:

"Until otherwise provided by law the * * * qualifications * * * of all county * * * officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers."

Pursuant to the power thus granted, and to otherwise provide by law, the Legislature, at the suggestion of the Code Commission, adopted Rev. Laws 1910, sec. 1549, which seeks to add a qualification for eligibility to the office in question. It reads:

"No person shall be eligible to any county office unless he shall be, at the time of his election or appointment, a qualified voter of the county."

Assuming that said section was legally adopted, what is meant by "qualified voter of the county," as used in this connection? Was it intended to disqualify a woman, otherwise qualified, from holding a county office? This sends us to the intent of the Legislature. As residence in the county was nowhere theretofore provided by law as a qualification for eligibility to a county office, in enacting said section we are of opinion that the Legislature had that in mind, and intended, not only to fix residence in the county as a qualification, but, more, it intended to prescribe a

right to vote therein. With this in view and that the Constitution (article 3, sec. 3) made eligible to vote at school district elections all female citizens of the state, and with no thought to disqualify such as were so entitled, the Legislature enacted the section in question prescribing as a qualification to hold a county office that one must be a "qualified voter of the county." Webster defines "of" as:

"Denoting that from which anything proceeds; indicating origin, source, descent, and the like; as, he is of a race of kings; he is of noble blood."

"Of the county" therefore means, not to prescribe so high a qualification as that of an elector or so low a qualification as to simply require one to be a resident of the county, but means that to be eligible to hold a county office the applicant must not only be a resident, but a voter, from the body of the county, such as is petitioner. It seems to us clear that, had the Legislature intended to disqualify on account of sex, it would have used the word "elector," instead of "voter." As an elector must be a male, and a voter can be either male or female, by using the word "voter" the Legislature thereby left both sexes eligible to the office as before the enactment of the statute under construction.

As the action of the board was therefore wrong in refusing to certify plaintiff's name as prayed, the judgment of the trial court is reversed, with directions to issue the writ requiring the board so to do and certify her name as prayed, whether it be Jane or Alice Stone; for it certainly is not "Mrs. John Stone," as appears in her petition.

All the Justices concur.